IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAHL CLIPPER CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PLAZA LAMA, S.A., ) <br> ) <br> Defendant. ) | Judge John J. Tharp, Jr. <br><br> No. 22-cv-00815 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Wahl Clipper Corporation's Petition for Declaratory Judgment after the entry of default against Defendant Plaza Lama, S.A. For the reasons set forth below, judgment will be entered for Plaintiff Wahl Clipper Corporation.

**INTRODUCTION**

Wahl Clipper Corporation ("Wahl") started selling hair clippers, hair trimmers and shavers through department store chain Plaza Lama, S.A. ("Plaza Lama") in the Dominican Republic approximately twenty-five years ago. At the time, the parties entered into a Distributor's Agreement (the "Agreement"), which contained a provision causing it to expire automatically after one year absent an express written renewal by both Wahl and Plaza Lama. The parties did not renew the Agreement in writing prior to its expiration and Wahl treated the Agreement as having expired per its terms.

Since that time, Plaza Lama invoked Law No. 173, a dealer protection statute in the Dominican Republic, in its communications with Wahl. The statute provides that foreign suppliers who terminate, or fail to renew, agreements without cause must pay substantial indemnity fees to the Dominican Republic dealers. Wahl contends that Law No. 173 does not

apply because the parties chose Illinois law, not the law of the Dominican Republic, to govern their relationship and the interpretation of the Agreement.

Wahl filed its complaint seeking a declaratory judgment that (a) the Agreement expired on December 31, 1997; (b) Law No. 173 does not apply to the relationship between Wahl and Plaza Lama; and (c) Plaza Lama is not owed any monies by Wahl due to the expiration of the Agreement. Wahl submitted proof to the Court that Plaza Lama was properly served with a summons and the Complaint under Fed. R. Civ. P. 4(h)(2) and 4(f)(2)(A), but Plaza Lama failed to answer or otherwise respond within the time provided by the Federal Rules of Civil Procedure. Wahl now seeks the entry of a declaratory judgment in its favor.

For the reasons that follow, the Court concludes that the parties' choice of Illinois law is enforceable under a conflict of laws analysis, Law No. 173 therefore does not apply, and Wahl is entitled to judgment.

## FACTUAL BACKGROUND

Wahl Clipper Corporation designs and manufactures, among other things, professional and consumer hair clippers, hair trimmers, and shavers. It is an Illinois corporation that maintains its principal place of business in Sterling, Illinois.

On or about January 2, 1997, the parties entered into a Distributor's Agreement, in which Defendant contracted to become a distributor of various Wahl products, including hair cutting machines, hair and face trimmers, massagers, and shavers in the Dominican Republic. The Agreement provided, in relevant part:

> Company [Wahl] hereby appoints Distributor [Plaza Lama] as its exclusive distributor in the territory described in Schedule A (the "Territory") for the purchase of the products described in Schedule B (the "Products") from Company and their resale by Distributor to retailers in the Territory, subject to the terms and conditions of this Agreement and such policies, rules, and instructions as Company may issue from time

to time with respect to the promotion and sale of the Products. Nothing in this Agreement shall prevent Company from selling Products, or give Distributor any claim against Company if Company sells Products:

(i) to any trans-national retailer outside the Territory, whether or not Company knows or has reason to know that the purchaser intends to resell the Products in or for use in the Territory; or

(ii) to any trans-national retailer in the Territory that sells the Products at retail to its customers.

(Distributor Agreement § 1, p. i). The Agreement further provided:

This Agreement cancels and replaces any previous understandings or agreements between the parties relating to the subject matter hereof, including any previously existing distributorship arrangement. This Agreement expresses the complete and final understanding of the parties with respect to the subject matter hereof and may not be changed in any way except by an instrument in writing signed by both parties. Any term or conditions stated in Distributor's order or Company's acceptance inconsistent with this Agreement shall be null and void.

(Distributor Agreement § 16, p. ix). The Agreement contained a specific provision concerning its termination or renewal:

This Agreement shall take effect on November 1, 1996. Unless sooner terminated as hereinafter provided, this Agreement shall expire automatically on December 31, 1997, unless the parties agree in writing 60 days prior to such date to renew this Agreement. Notwithstanding that the parties may agree to renew this Agreement, it is and shall be interpreted as a fixed-term agreement and not an indefinite term agreement.

(Distributor Agreement § 10, p. vi). The Agreement also contained a choice of law provision, which stated:

This Agreement shall be governed by and construed in accordance with the law of the State of Illinois. Any claim, action, proceeding, or suit against either party with respect to the subject matter of this Agreement may be brought in a court of competent jurisdiction in the State of Illinois, and each party hereby irrevocably submits to the jurisdiction of such court for the purposes of any such claim, action, proceeding, or suit.

(Distributor Agreement § 20, p. x).

Wahl and Plaza Lama did not agree to renew the Agreement in writing at least sixty days prior to its expiration on December 31, 1997. Per its terms, the Agreement expired on December 31, 1997. Following the expiration of the Agreement, however, Wahl continued to transact business with Plaza Lama, but on a non-exclusive, purchase order/confirmation basis. In 2012, Wahl offered Plaza Lama a two-year exclusive agreement to distribute Wahl's products in the Dominican Republic. However, the proposed two-year agreement was never executed by the parties and the parties continued transacting business on a non-exclusive, purchase order/confirmation basis.

On or about November 17, 2021, Plaza Lama contacted Wahl and demanded that Wahl continue to perform under the terms of the Agreement. Plaza Lama also threated to seek damages against Wahl in the Dominican Republic under Law No. 173. Law No. 173 is intended to protect local Dominican agents and distributors of foreign products against unfair or unilateral termination of their distributorships by foreign suppliers once their products have gained a foothold in the Dominican market. Law No. 173 grants protection to local agents and distributors by allowing termination by a foreign supplier only in cases involving "just cause."

Due to Plaza Lama's threat to seek damages in the courts of the Dominican Republic, Wahl filed a Complaint for Declaratory Judgment in the United States District Court for the Northern District of Illinois on February 15, 2022. Wahl filed its Motion for Entry of Default on April 6, 2022, after Plaza Lama failed to answer or otherwise respond to Wahl's Complaint for Declaratory Judgment. The Court entered default against Plaza Lama on August 19, 2022. Wahl now seeks the entry of a declaratory judgment in its favor. Plaza Lama has not responded to Wahl's motion. Nevertheless, the Court must assess whether, taking Wahl's allegations as

true, Wahl is entitled to judgment; Plaza Lama's default, standing alone, does not entitle Wahl to a judgment. "The basic effect of an entry of default … is that upon default, the well-pleaded allegations of a complaint relating to liability are taken as true. The defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c). At the same time, however, the entry of default does not of itself determine rights. That role is reserved for a default judgment." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (internal citations omitted).

## DISCUSSION[1]

Wahl first asks the Court to determine that Illinois law applies to the Distributor Agreement and that Dominican Republic Law No. 173 is inapplicable to the relationship between the parties. The Distributor Agreement provides

> This Agreement shall be governed by and construed in accordance with the law of the State of Illinois. Any claim, action, proceeding, or suit against either party with respect to the subject matter of this Agreement may be brought in a court of competent jurisdiction in the State of Illinois, and each party hereby irrevocably submits to the jurisdiction of such a court for the purpose of any such claim, action, proceeding, or suit.

(Distributor Agreement § 20, p. x).

Other courts that have examined dealer protection statutes in other jurisdictions, such as Puerto Rico, against choice of law provisions calling for the application of the law of a domestic jurisdiction have almost uniformly applied the Restatement (Second) of Conflict of Laws. *See, e.g., Beatty Caribbean, Inc. v. Viskase Sales Corp.,* 241 F. Supp. 2d 123 (D.P.R. 2003); *S. Int'l*

---

[1] The language and analysis in this Discussion section is, in large measure, cribbed from that of Chief Judge Robert Jonker's thorough opinion in *S2 Yachts, Inc. v. ERH Marine Corp.*, 427 F. Supp. 3d 934 (W.D. Mich., 2019). In *S2 Yachts,* Chief Judge Jonker was confronted with a very similar question regarding the applicability of the Dominican Republic's Law 173 to an agreement between a Michigan-based supplier and a Dominican distributor and that contained a Michigan choice-of-law provision. Chief Judge Jonker's opinion is highly persuasive, and rather than reinvent the wheel, this Court adopts much of the relevant language from that opinion.

*Sales Co. v. Potter & Brumfield Div. of AMF Inc.,* 410 F. Supp. 1339, 1341 (S.D.N.Y. 1976); *Bausch & Lomb Inc. v. Fusion Consulting Grp., Inc.,* No. SACV 13-00776-CJC (JPRX), 2014 WL 11858167 (C.D. Cal. Mar. 20, 2014); *Advance Exp., Inc. v. Medline Indus., Inc.*, No. CV 06-1527 (JAF), 2006 WL 8451089 (D.P.R. July 20, 2006). The Court is satisfied, therefore, that the Conflict of Laws analysis provides the proper framework for evaluating motions with respect to the application of Law No. 173.

Generally, in a diversity action for breach of contract, courts enforce the parties' contractual choice of forum and governing law. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991). Here the Agreement unequivocally selects Illinois law. (Distributor Agreement § 20, p. x). According to the complaint, Plaza Lama had argued to Wahl that Law No. 173, rather than Illinois law, applies to invalidate any decision by Wahl to let the Agreement expire by its terms without paying substantial fees. This led Wahl to seek a declaratory judgment on the issue.

In diversity actions, a federal court applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here the forum state is Illinois, and the Court should therefore look to Illinois' conflict of law rules to determine whether Illinois or Dominican Republic law governs this action. Courts in Illinois have adopted the approach set forth in the Restatement (Second) of Conflict of Laws. *See Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 61 (2007). The general rule of the Restatement is to respect and honor the parties' contractual choice of law.

Section 187(2) of the Restatement (Second) establishes the generally applicable basis for analysis:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either:
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflict of Laws § 187(2) (1971).

### A. The Dominican Republic's Interest is Not Materially Greater than Illinois' Interest.

Illinois plainly has a substantial relationship to the parties. Wahl is located in Illinois, and the contracting parties had a reasonable basis for choosing Illinois law. Wahl, with authorized distributors across multiple jurisdictions, desired certainty and uniformity in defending itself in potential suits from those dealers. *Cf. Midwest Enterprises, Inc. v. Generac Corp.*, No. 91 C 2229, 1991 WL 169059, at *3 (N.D. Ill. Aug. 27, 1991) (Illinois corporation domiciled in Illinois with a principal place of business in Illinois had reasonable basis for choosing Illinois law).

Further, Illinois law does not contravene the fundamental public policy of a jurisdiction with a materially greater interest. In Illinois, "Parties are generally free to include language of their choice in contracts, and courts should refrain from rewriting them." *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 2022 WL 2828752, at *8 (N.D. Ill. July 19, 2022). The laws and the public policy of Illinois permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or the known public policy of the state that courts will hold it void. *Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 89 (7th Cir. 1993).

Even if application of Illinois law would violate fundamental Dominican Republic public policy, that fact would not be dispositive because Illinois courts would only apply Dominican Republic law if those courts determined that the Dominican Republic has a ***materially*** greater interest than Illinois in the determination of the contractual issues. The Court is satisfied that the Dominican Republic does not have a materially greater interest than Illinois in application of its law to the contract.

There is no question that Illinois has an interest in the determination of this particular issue. Wahl is an Illinois corporation, with its principal place of business in the Northern District of Illinois. Furthermore, "Illinois has an interest in the business practices of corporations which are incorporated in Illinois and/or maintain a principal place of business in Illinois … Illinois has an interest in resolving contract disputes which involve an Illinois corporation." *Sub-Micron Systems, Inc. v. Sub-Micron Surfacing, Inc.*, 1993 WL 524273, at *11 (N.D. Ill. 1993). This includes an interest in ensuring its citizens are not bound for an indefinite period to agreements that do not provide for such long lasting relationships. And Illinois surely has an interest in protecting Wahl, an Illinois company, from the possible economic loss that may result from extending its obligations into unanticipated periods.

This Court has been presented with no evidence that the Dominican Republic's interests in enforcing Law No. 173 are materially greater than Illinois' interests (indeed, Plaza Lama has not responded to this lawsuit in an effort to assert its interests under Law No. 173). Absent such evidence that the Dominican Republic's interest was not just greater but materially greater, there is no reason to disturb the parties' choice of Illinois law.

### B. Application of Illinois Law Would Not Be Contrary to Fundamental Dominican Public Policy.

The Court's conclusion that application of the parties' choice of Illinois law would not be contrary to a fundamental public policy of the Dominican Republic is further buttressed by the Dominican Republic's implementation of DR-CAFTA in 2007. DR-CAFTA is a regional trade agreement among the United States, the Dominican Republic, and several Central American countries. It aims to promote open markets among the signatory nations by eliminating and/or phasing out barriers to trade (*e.g.*, tariffs) and otherwise improving market-access conditions for foreign suppliers of goods and services. Since the passage of DR-CAFTA, it is plain that the Dominican Republic does not completely prohibit clauses permitting foreign suppliers to let dealer agreements expire by their terms.

Law No. 173 is designed to prevent an arbitrary and unilateral termination of dealership agreements once the Dominican Republic dealer "successfully developed a market" in the Dominican Republic for the foreign supplier's products. *See Beatty Caribbean, Inc. v. Viskase Sales Corp.,* 241 F. Supp. 2d 123, 129 (D.P.R. 2003) (discussing similar dealer protection statute in Puerto Rico). Under Law No. 173, a party who unilaterally fails to renew a covered agreement must pay an indemnity to the affected company in the Dominican Republic.

Since its implementation by the Dominican Republic, DR-CAFTA has provided that the Dominican Republic "shall not apply Law No. 173 to any covered contract signed after the date of entry into force of this Agreement unless the contract explicitly provides for the application of Law No. 173[.]" DR-CAFTA, Annex 11.13 § B(1). Instead, the Dominican Republic agreed, *inter alia*, to "treat the covered contract in a manner consistent with ... the principle of freedom of contract," and to "treat the termination of the covered contract, either on its

9

termination date ... as just cause for a goods or service supplier to terminate the contract or allow the contract to expire without renewal[.]" *Id.* at Annex 11.13 § B(1)(b)-(c).

DR-CAFTA now expressly permits a contract between an American supplier and a Dominican Republic dealer to expire without renewal, in as much as the expiration amounts to just cause for the contract's termination. *See id.* at Annex 11.13 § B(1)(c). To be sure, this provision of DR-CAFTA does not apply to Wahl and Plaza Lama's Distributor's Agreement because the Distributor's Agreement was not "signed after the date of entry into force of" DR-CAFTA. *Id.* at Annex 11.13 § B(1).[2] The Court nevertheless finds the treaty insightful because it reflects that the Dominican Republic does not hold the objective of Law No. 173 to be one of its fundamental principles of justice. *See* Restatement (Second) of Conflict of Laws, § 187 cmt. g, (1971) ("To be 'fundamental,' a policy must in any event be a substantial one …. Nor is such policy likely to be represented by a rule tending to become obsolete."). Otherwise, it would not have implemented DR-CAFTA's provision completely overriding Law No. 173 with respect to distributor's agreements involving suppliers from other signatory nations (such as the United States) that are signed after the treaty's implementation. Accordingly, the Court holds Dominican public policy is not offended by the parties' contractual choice of law clause. The Court further holds that the choice of law provision is binding and Illinois law, not Dominican Republic Law, governs the Agreement.

\*\*\*

---

[2] DR-CAFTA entered into force in the Dominican Republic in March 2007, approximately a decade after Wahl and Plaza Lama entered into and eventually declined to renew their Distributor's Agreement.

For the foregoing reasons, Wahl was within its rights to let the Agreement expire by its terms without renewals, and Plaza Lama is not entitled to relief under Law No. 173 based on that non-renewal.

**IT IS THEREFORE ORDERED** that:

Judgment is hereby entered in favor of Plaintiff Wahl Clipper Corporation and against Defendant Plaza Lama, S.A.;

The Parties' Choice of Law of Illinois in the Distributor's Agreement is enforceable;

Law No. 173 of the Dominican Republic does not apply to the Distributor's Agreement or the relationship between the Parties;

The Distributor's Agreement expired on December 31, 1997;

Defendant Plaza Lama, S.A. is not entitled to any damages from Plaintiff Wahl Clipper Corporation because of the expiration of the Distributor's Agreement.

Date: November 4, 2022

John J. Tharp, Jr.
United States District Judge